CASE 51—PHILLIPS' WILL—OCTOBER 11, 1883.

# Phillips' ex'r v. Phillips' adm'r.

APPEAL FROM LINCOLN COMMON PLEAS COURT.

1. The court properly submitted the issue of will or no will, as to each of the alleged wills, to the same jury.
2. The method of introducing testimony to sustain or oppose both papers was properly fixed by the court.
3. The devisees, Ray and Doom, were competent witnesses.
4. There is nothing in the admission or rejection of evidence to materially prejudice the appellants.
5. Many of the instructions asked for by appellants are abstractly correct, and would be applicable if the court were to determine the facts as well as the law; but, under our system, where the court fixes the law and the jury decide upon the facts, they are not applicable.
6. If a nominated executor, when acting in good faith, and upon reasonable grounds, to secure the probate of a paper purporting to be the will of a decedent, fails in his attempt, he is entitled, in addition to his taxable costs, to such incidental expenses, as counsel fees, and

whatever other sums he has expended in the effort to obtain probate of the paper, to be paid out of the decedent's estate.

7. The provisions of chapter 26, General Statutes, have no application to this case.

RUSSELL & AVERITT, WELCH & SAUFLEY, HILL & ALCORN, AND WM. LINDSAY FOR APPELLANT.

1. Ray and Doom, the two devisees, under the will of 1877, were incompetent to testify in the case. (Section 606, Civil Code; Mercer v. Macklin, 14 Bush, 436; Gen. Stat., ch. 113, sec. 13.)

2. The court erred in giving judgment against appellant individually for the costs of the case and awarding execution against him. It is the duty of a nominated executor to offer the will for probate in the county court, and if he be defeated there, to appeal to the circuit court. If such were not the case, few wills would ever be established contrary to the wish of the decedent's heirs. The action of the county court is not even *prima facie* evidence of a will. The case must be tried *de novo* in the circuit court. (1 B. Mon., 392; 6 J. J. Mar.; 52; Redfield on Wills, vol. 3, 123; *Ib.*, vol. 1, 117-'18; Law Rep., 1st Prob. & Div., 359; *Ib.*, 239; Brown v. Rogers, 1st Houston, 458; 1 Cald., 471; Pryor v. Mizner, 79 Ky. Rep.)

3. Instruction No. 2 should not have been given except with the proviso that the testator's mind must be unaffected by organic disease. (Redfield on Wills, vol. 1, 125-'6; 21 Vermont, 168; 60 Barb., 69; 62 *Ib.*, 250; 48 Mo., 291; Redfield's Am. Cases on Wills, 165.)

4. All the other instructions are objectionable.

ROUNTREE & LISLE, DURHAM & JACOBS, AND C. S. HILL FOR APPELLEE.

1. The devisees, Doom and Ray, were competent witnesses for the will. (Milton v. Hunter, 13 Bush, 169; Cave v. Cave, *Ib.*, 452.)

2. The judgment for costs against the nominated executor, J. G. Phillips, was right. He had no authority to put himself upon record as party litigant to probate the will and contest that of a later date, and to follow up the contest through the county court, and through two trials in the common pleas court. No statute gives him any such power. (Sec. 29, ch. 113, Gen. Stat.; 9 Bush, 55; Gen. Stat., ch. 26, sec. 17; Broaddus v. Broaddus, 10 Bush, 306; 4 B. Mon., 471; 7 Bush, 245.)

3. It was proper to try before the same jury which was the true will of the decedent.

4. The court committed no error either in giving or refusing instructions. (Tudor v. Tudor, 17 B. M., 295; Howard v. Coke, 7 *Ib.*, 468; 9 Conn., 102; Elliott's Will, 2 J. J. Mar., 434; 4 Wash. C. C. Rep., 262; 6 Ga., 324; Weir's Will, 9 Dana, 440; Violet's Will, 1 Bibb, 617; Sechrest v. Edwards, 4 Met., 174; 6 Georgia, 324; 66 N. C., 584; Hawkins v.

Grimes, 13 B. Mon., 270; Singleton v. Singleton, 8 Dana, 319; Milton v. Hunter, 13 B. Mon., 163; 4 N. C., 199; 13 Bush, 180; Wharton on Ev., sec. 1253; Carpenter v. Carpenter, 8 Bush, 286.)

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

This is a contest as to which of two papers is the true and last will of D. M. Phillips. The paper purporting to have been executed in 1869 gives the property to the nominated executor, J. G. Phillips, in trust for the son of D. M. Phillips, and in case of his death, to certain charitable uses. The other paper, executed after the death of the testator's son in 1877, gives the estate to B. H. Ray and Ben. Doom, nephews of the testator, and nearest of kin, to whom the estate would have passed in case of intestacy. The J. G. Phillips, the nominated executor in the will of 1869, offered it for probate, when he was met by appellees with the claim that the will of 1877, which, in terms, revokes all other wills, was the last and true will of D. W. Phillips. The will of 1877 was admitted to probate, whereupon appellant, J. G. Phillips, as nominated executor, appealed to the common pleas court, where the question as to which of the two papers, if either, was the will of D. W. Phillips, was submitted to a jury, and a finding had in favor of the will of 1877. From that finding this appeal is taken.

The issue below was, whether the testator was of sound mind, and whether the will of 1877 was obtained by undue influence.

The record contains some two thousand pages, with much conflicting evidence; but after a careful reading and consideration of it, we arrive at the conclusion that the weight of the evidence is in favor of the sanity of the testator at the time of the execution of the will of 1877, and that no undue influence operated to secure its execution; but if we were

not satisfied of this, we could not disturb the verdict of the jury unless the weight of the evidence was flagrantly against the finding of the jury, as verdicts in will cases are to be treated in this court as verdicts in other cases.

The one hundred and sixty-nine assignments of errors in this case may be condensed and stated, in substance, as follows:

*First.* That the court should not have submitted the issue on each of these wills to the same jury, as it is claimed the field of testimony necessary to go over on these two issues was so great as to create confusion in the minds of the jury.

*Second.* That it was error to allow the devisees, B. H. Ray and Ben. Doom, to testify.

*Third.* That the court erred in various instances in the admission and rejection of evidence.

*Fourth.* Errors in giving and refusing instructions.

*Fifth.* In giving personal judgment against appellant, J. G. Phillips, for cost.

As to the first assignment, we think the court below pursued an eminently wise and proper course in submitting the issue of will or no will, as to each of these papers, to the same jury, and acted properly in the method of introducing testimony to sustain or overthrow.

The second objection, that the devisees, Ray and Doom, were permitted to testify, has been repeatedly decided in favor of their competency. (Milton v. Hunter and Cave v. Cave, 13 Bush, 163 and 453; Flood v. Pragroff, 79 Ky., 614.)

The third point covers the admission and rejection of evidence in a great number of instances. We have examined them all, and while, in several cases, we find technical errors

both in the admission and rejection of evidence, there is nothing to materially injure or prejudice appellants, and we will therefore not discuss them in detail, as it would be a useless consumption of time.

The principal complaint on the fourth point is, that the court did not correctly define to the jury that soundness of mind necessary to the valid making and execution of a will. The court defined it as follows:

"That soundness of mind in making a will is capacity to know by the testator his legal heirs, and his estate, and to dispose of the same in a rational manner, according to a fixed purpose of his own."

This is the same instruction, in substance, that was given and approved in Tudor v. Tudor, 17 B. M., 391, and which has been so long and so repeatedly indorsed by this court, that we are not inclined to disturb it, although it be possible to get an instruction with more technical accuracy. It is not calculated to mislead the jury, and that is reason enough for allowing it to remain as it is. (Wise v. Foote, Op. Feb. 5, 1883, 4 Law Rep., 645.)

The instructions given by the court as to insane delusions and undue influence accord with our view of the law and with the repeated rulings of this court. An attempt at a fuller and more accurate definition of any of these words would more probably mislead and confuse the average juror than enlighten him.

Many of the instructions asked for by appellants and refused were in reference to the weight to be given certain portions of the evidence, and as to the presumptions to flow from given relations between the parties and the testator. Many of them are, abstractly, good law, and would be applicable if the court were to determine the facts as well

as the law; but they are not applicable under our system, where the law is for the court and the facts for the jury. In such cases undue prominence should not be given in the instructions to any fact or circumstance proven in the case. When the evidence is determined by the court to be competent, it goes to the jury for them to weigh.

The question presented by the fifth point requires more elaborate treatment than any of the others.

If the provisions of the General Statutes in regard to cost generally apply to the cost. of a nominated executor who fails, when acting in good faith and upon reasonable grounds, to secure the probate of the will in which he is named as executor, then the judgment of the court below adjudging against him personally the costs is correct, otherwise not. That the provisions in reference to costs apply generally to civil and equitable actions, and not to a case like this, we think is clear.

Section 12 of chapter 26, General Statutes, provides that "the party succeeding in any civil action, on the merits or otherwise, shall recover costs, unless differently provided in this chapter."

The 13th section makes provision for taxation of costs in equity actions. The 17th section is as follows:

"A personal representative, plaintiff or defendant in any action, shall, if unsuccessful, be adjudged to pay costs as other litigants. The judgment for costs in such cases shall only be against the assets which have or may come to his hands."

Nowhere in this chapter are nominated executors referred to, unless this last quoted section refers to them; but that it does not is clear from section 1, article 1, chapter 39, which is as follows:

"The person named in a will as executor of it shall not act as such to any extent until the will, or an authenticated copy of it, is admitted to record, and he has executed bond and taken the oath required by law in the court in which the record is made; but he may provide for the burial of the testator, pay the reasonable funeral expenses, and take care of and preserve the estate."

So it is seen that, within the meaning of the provisions of the statute as to cost, he cannot bring an action, and therefore they make no provisions for the costs of a nominated executor on failure to have the will probated, although the statute makes it his duty to offer the will for probate, and, as we have held, that it is his duty to prosecute an appeal from the judgment of the county court rejecting the will, if he believes the judgment wrong. (Pryor v. Mizner, 79 Kentucky, 232.)

It being his duty to offer the will for probate, and, in good faith, to exhaust all legal or equitable remedies to that end, and the statute making no provision for cost, it is reasonable to conclude, as we have adjudged, and as appears to be the general rule, he should be compensated out of the estate for the discharge of this duty. (Gilbert v. Bartlett, 9 Bush, 52; Redfield on Wills (3d ed.), vol. 3, side page 123; 31 Penn. St., 311; Ammais' Appeal, 1 Houston, 458, Browne v. Davis' ex'r.)

The question then is as to the manner in which relief should be granted. If the judgment of the lower court is affirmed, the question of the right to the cost would be *res adjudicata*. If it is reversed and sent back, in what manner shall be determined the amount to which appellant is entitled? If he is relegated to an action in equity, a re-examination of the whole of the large record we have been

Phillips' ex'r v. Phillips' adm'r.

considering would be necessary to a correct conclusion as to whether the proceedings by appellant were in good faith, as well as to determine the amount to which he is entitled. The court from which this appeal comes being one of general jurisdiction, and the question of cost being a mere incident to the main proceeding, there appears no reason why that court may not appoint a commissioner to take proof and report such incidental expenses as reasonable counsel fees, and whatever reasonable sums appellant may, in addition to the taxable costs, have expended in the effort to probate the paper of 1869, and on that report adjudge that it be paid out of the estate, appellant first accounting for anything belonging to the estate that may be in his hands. There appears here no evidence of bad faith on the part of the nominated executor, and as this case must be reversed for failure to allow appellant, J. G. Phillips, his cost as nominated executor, we necessarily determine that there was no fraud or misconduct on the part of J. G. Phillips, acting as nominated executor.

As all the parties interested in the estate were before the court, and had full opportunity to be heard, the court erred in refusing to sustain appellant's, J. G. Phillips, motion to allow him his costs.

Wherefore, the judgment against J. G. Phillips for cost is reversed, the judgment in other respects is affirmed, and the cause remanded, with directions to appoint a commissioner as and for the purpose indicated, and for further proceedings consistent with this opinion.