## HUFF v. HUFF et al.
### No. 985.

Court of Civil Appeals of Texas. Eastland.
Sept. 23, 1932.

Callaway & Reese, of Comanche, and Gib
Callaway, of Brownwood, for appellant.

Geo. E. Smith, of Comanche, for appellees.

FUNDERBURK, J.

The appeal is from a judgment of the court
below, refusing probate of the will of Mrs. T.

C. Huff, deceased. J. H. (Henry) Huff was the
proponent and W. T. (Will) Huff, Mrs. Alma
Camp, and Mrs. Iva House (the latter two
each joined pro forma by her husband) were
the contestants. J. H. Huff, Mrs. R. H. Den-
ny, and George D. Huff were the beneficiaries
named in said will. The beneficiaries and the
contestants, W. T. Huff and Mrs. Alma Camp,
were the children of Mrs. T. C. Huff, and the
contestant Mrs. Iva House was her grand-
child. In the county court the will had been
admitted to probate. The grounds of the con-
test were two, namely: (1) Lack of testamen-
tary capacity in the testatrix by reason of un-
soundness of mind; and (2) undue influence
of the beneficiaries, particularly J. H. Huff.
In the district court the jury failed to make
a finding upon the issue of mental incapacity,
but found in favor of the contestants upon the
issue of undue influence.

Appellant J. H. Huff, by his first five as-
signments of error, complains of the action of
the trial court in overruling certain special
exceptions to the answer of the contestants.
Without setting out the portions of the plead-
ing to which the exceptions were addressed,
we express the opinion that the exceptions
were properly overruled.

By assignments of error 7 to 15 it is con-
tended that the court erred in permitting cer-
tain witnesses, over the objections of appel-
lant, to testify to the effect that, in their
opinion, the testatrix, Mrs. T. C. Huff, was
not of sound mind. The point made is that
the witnesses did not testify to such facts or
circumstances as rendered admissible in con-
nection therewith their non-expert opinions.
There seems to be no difference of opinion be-
tween the parties as to the rule of law that
should govern. Appellant simply insists that
there was no evidence of the necessary facts
and circumstances, and the appellees contend
that there was such evidence. Since the ques-
tion does not affect the disposition of the case,
we deem it unnecessary to set out the evi-
dence, but we have concluded that the wit-
nesses did state sufficient facts to render ad-
missible the evidence in question.

By assignments of error Nos. 17 and
18 it is complained that the court erred in
permitting the contestant Will Huff to tes-
tify as follows: "Well, we would visit them
once or twice a month. Mother was very
feeble. Father died in 1925." And also as
follows: "Well, Dr. Gray was called out
there to see me and Mother was complaining
and we asked him to go in and talk with
her. He saw my mother on that occasion."
The testimony was objected to on the ground
that it showed a transaction with the de-
ceased prohibited by R. S. 1925, art. 3716.
We are inclined to the view that the testimo-
ny was, in part at least, such as the statute
prohibits. Holland v. Nimitz, 111 Tex. 419,

232 S. W. 298, 239 S. W. 185; International Travelers' Ass'n v. Bettis (Tex. Sup.) 35 S. W. (2d) 1040; Dominquez v. Garcia (Tex. Civ. App.) 36 S.W.(2d) 299. We are, however, also of opinion that the testimony should be treated as immaterial. We think that the record affirmatively shows that this testimony could not have injuriously affected the beneficiaries.

■ Complaint is made of the action of the trial court in admitting in evidence, over appellant's objections, two letters, one dated March 29, 1926, written by George Huff to W. T. Huff, and the other dated May 3, 1926, written by George Huff to Mrs. W. T. Huff. In the first letter is the following: "I am sorry to hear of the trouble with Mother. However, it is no more than I or all of us expected. * * * It would have not surprised me one bit if I had received a letter telling me that she had lost her mind completely. I have expected it every day and it may come yet."

The other letter was as follows:

"Dear Ada: I was mighty glad to have your letter several days ago telling me what you had gone through the past six months. I do not want you and Willie to feel badly at all. The outcome is about what we all expected. I know what she usually talked about. I have heard it a hundred times, over and over. It is enough to get on the nerves of any one. Many times when I would be home in the summertime I would be just counting the hours until it would be time I could get away. No one ever knew how glad I have been at times to step on the train. It seemed almost like going into a different world. I know you did your best and that is all there is to it. It was impossible to keep her in a good humor all the time. We all probably made a mistake to move her away from the old home. There is the only place she will ever be happy and it will be the place where she will spend the rest of her life. I do not want you to feel that you have failed but instead we can realize now that it was impossible. If it had been possible you would have succeeded. No one blames you or could blame you. You and Willie have done better than any of the rest of us could have done. It would have been worse had she gone anywhere else. So let's forget the fact that she got mad and things could not go as we had hoped they would. There is one thing I want you to know and that is I appreciate your effort in trying to take care of her. It is far more than many would have done. You have always been ready to help my mother and father and you have never hesitated one minute to do anything that was needed to be done. Every thing will work out and everything will be O. K. I am glad you wrote me all about it. I want Will to manage the estate as we all agreed and there should be no trouble about it. Write me as often as you can.

"Geo."

The objections to the admission in evidence of these letters were, among other things, that they were hearsay and were not admissible as declarations against interest, for the reason that, when they were written the will had not been made. We believe that, under the authority of Bell v. Preston, 19 Tex. Civ. App. 375, 47 S. W. 753, and Gay v. Jackman (Tex. Com. App.) 252 S. W. 1042, the letters, being hearsay, were inadmissible as declarations against interest for the reason specified in the objections. The reason for this exception to the hearsay evidence rule does not exist where there is no interest in the subject-matter of the declaration at the time same is made, and hence in such case the exception does not exist. The letters, we think, should have been excluded.

■ The majority of the court are of the opinion that the admission in evidence of said letters, over the objections made, being error, was probably prejudicial to the rights of the appellants, the contrary not affirmatively appearing. It is further their view that, since this conclusion requires the case to be remanded for another trial, it becomes unnecessary to determine the questions of "no evidence" and "insufficiency of evidence" of undue influence. The judgment of the court will therefore be entered accordingly reversing and remanding the case.

The writer, while agreeing that the admission in evidence of the two letters was error, is inclined to the view that the error was not such as to require a reversal. It seems to me that the only material bearing the letters could have had was on the issue of mental unsoundness, as to which the jury made no finding, and which therefore was eliminated as a basis of the judgment under attack. While recognizing the rule that error is presumptively prejudicial unless the contrary affirmatively appears, it seems to me reasonably certain that the letters could not have influenced the jury in their finding upon the issue of undue influence, and that therefore the error was harmless.

I concur, however, in the action of the majority for another and different reason. I think the twenty-fifth assignment of error, presenting the contention that the evidence of undue influence was insufficient and for which reason the trial court should have granted the new trial, should be sustained. It would extend the opinion to an undesirable length to set out all the evidence claimed to be sufficient. Direct evidence was wholly wanting. If, therefore, there was sufficient evidence, it consisted of the evidence of facts

and circumstances from which the ultimate fact of undue influence, if any, was to be inferred. It may be conceded there was some evidence of opportunity, which, as held in Craycroft v. Crawford (Tex. Com. App.) 285 S. W. 275, "has relevancy." But, as said in Brown v. Mitchell, 75 Tex. 9, 12 S. W. 606, 607, "the probate of a will cannot be set aside on proof of facts which, at most, do no more than show that opportunity to exercise undue influence may have existed, or to raise a bare suspicion that such influence may have been used." Such, it seems to me, is about the legal effect of all the evidence in this case bearing upon the question of undue influence, as distinguished from the undetermined issue of mental incapacity.

It must be borne in mind that the contestants sought to show that testatrix was mentally incompetent to make a will. The evidence upon that issue was ample to support a finding of such incapacity. Had that issue been determined by the jury, there would have been no question of the sufficiency of the evidence to support the verdict and judgment. But, the jury having failed to make a finding upon the issue of mental unsoundness, the judgment must depend alone for its support upon the finding of undue influence. It so happens in this case that impairment of mind and the nature and degree thereof are important facts upon the issue of undue influence. Contestants offered testimony to show that the testatrix was subject to delusions. This testimony which was primarily designed to show the lack of testamentary capacity, even though failing in that purpose, supplied an all sufficient explanation of the unreasonable distrust testatrix manifested toward W. T. Huff and the other contestants. It fully answered the question of why she should make the unnatural and unmerited discrimination against the contestants in the provisions of her will. With a sufficient reason thus shown to account for her action, the mere fact that Henry Huff had opportunity to influence her, or that he was mistrustful of W. T. Huff as manager of her estate, and had sought to have the management taken from him, loses considerably in probative value. Since there was some question of testatrix's mental unsoundness, it seems to me that it is just as legitimate an inference from the facts in evidence that Henry Huff may have been influenced by his mother to become distrustful of W. T. Huff as that testatrix was in any way influenced improperly by Henry Huff.

Contestants stress the fact that the beneficiaries had the means to show that there was no undue influence, or at least to offer important evidence bearing upon that issue, but did not testify. I think, however, that the evidence fails to show the existence of any competent evidence which contestants could have offered. It is apparent that most of the facts which could have had a bearing on the question would have consisted of statements by, or transactions with, the deceased testatrix, and therefore incompetent. The failure of proponent to offer such testimony could not be properly considered in testing the sufficiency of the evidence.